IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| South Carolina Wildlife Federation; South Carolina Coastal Conservation League; and Audubon South Carolina, <br><br> Plaintiffs, <br><br> vs. <br><br> H.B. Limehouse, Executive Director, South Carolina Department of Transportation; Federal Highway Administration; and Robert L. Lee, Division Administrator, Federal Highway Administration, <br><br> Defendants. | C/A No. 2:06-CV-2528-DCN <br><br><br><br> **ORDER AND OPINION** |

This matter is before the court on plaintiffs' motion for leave to amend the complaint and defendants' joint motion for voluntary remand and stay of these proceedings. Plaintiffs have moved to amend their complaint to remove claims against the South Carolina Department of Transportation (SCDOT) and to add claims under Section 18(a) of the Federal-Aid Highway Act, 23 U.S.C. § 138, and Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303 (collectively referred to as "Section 4(f)") against the remaining defendants. Meanwhile, defendants have moved for a voluntary remand of the decision adopting the Final Environmental Impact Statement (FEIS) to the Federal Highway Administration (FHWA) for further review. Defendants also ask for a stay of the proceedings in the case until this review takes place. For the reasons stated below, the court grants plaintiffs' motion for leave to amend the complaint

1

and also grants defendants' motion for voluntary remand and stay of litigation.

## I.  FACTS AND BACKGROUND

This case involves the proposed construction of the Briggs-DeLaine-Pearson Connector ("Connector"), a large highway construction project expected to cost a total of $100 million.  The Connector will span approximately 9.6 miles and connect the towns of Rimini (1990 population, 286) and Lone Star (1990 population, 601) by running through the Upper Santee Swamp, which is also historically referred to as Sparkleberry Swamp.  Congress authorized the project in 1998 and appropriated funding of $16.08 million in 2005.

The National Environmental Policy Act (NEPA) requires agencies to prepare or adopt an environmental impact statement (EIS) before undertaking a major federal action that may significantly affect the quality of the human environment.  42 U.S.C. § 4332(2)(C).  The SCDOT and FHWA authored the draft environmental impact statement (DEIS) for the project in 2001.  The agencies thereafter received critical comments during the public input period.  These comments included scientific studies demonstrating the proposed project's negative environmental impacts.  The FEIS was issued in 2002.  The FHWA issued its record of decision adopting the FEIS in 2003.  Under a notice published by the FHWA in March 2006, the statute of limitations for challenging the final agency actions with regard to the Connector was set to expire on September 13, 2006.  Plaintiffs filed their complaint on September 12.

Plaintiffs allege the FEIS was deficient and should not have been approved in the Record of Decision.  Plaintiffs claim the FEIS failed to cure misstatements and omissions

and failed to address the significant concerns that public and interest groups had communicated in response to the DEIS. Plaintiffs present several scenarios of harmful impacts on the environment and claim defendants failed to adequately evaluate the environmental impacts of the project. Plaintiffs also allege defendants failed to consider alternatives and argue the project is not a transportation priority. Thus, plaintiffs' claims in this action center on the FEIS.

On December 11, 2006, the state defendants filed a motion to dismiss. The court granted the motion as to the SCDOT on sovereign immunity grounds, but denied the motion as to defendant Limehouse. The court stayed the litigation pending Limehouse's appeal to the Fourth Circuit, which affirmed this court's decision on December 5, 2008, and denied Limehouse's request for rehearing and en banc review on January 9, 2009.

## II. LAW AND DISCUSSION

### A. Plaintiffs' Motion to Amend

Plaintiffs original complaint asserted causes of action against the federal defendants under the Administrative Procedure Act for alleged violations of NEPA. The court found that plaintiffs' claims against defendant Limehouse were viable under Ex Parte Young, 209 U.S. 123 (1908). Plaintiffs now seek to amend their complaint to remove the claims against the SCDOT and to add claims under Section 18(a) of the Federal-Aid Highway Act, 23 U.S.C. § 138, and Section 4(f) of the Department of Transportation Act, 49 U.S.C. § 303 against the remaining defendants.

Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has

declared that "this mandate is to be heeded." Foman v. Davis, 371 U.S. 178, 182 (1962). The law is well settled "that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986) (citing Foman, 371 U.S. at 182). Delay alone is an insufficient reason to deny leave to amend; rather, the delay must be accompanied by prejudice, bad faith, or futility. Johnson, 785 F.2d at 510 (citations omitted).

Defendants put forth several arguments as to why leave to amend should be denied. Defendant Limehouse asserts that such amendment would be in violation of the scheduling order and that the proposed cause of action is time-barred. The federal defendants assert that the new cause of action is time-barred and of a different character than the original claims. In a sur-reply argument, the federal defendants posit that plaintiffs have forfeited their ability to bring the Section 4(f) claim.

Section 4(f) provides that the FHWA and other Department of Transportation agencies cannot approve the use of land from a significant publicly owned park, recreation area, wildlife or waterfowl refuge, or any significant historic site unless there is no feasible and prudent alternative to use of the land for the project, and the action includes all possible planning to minimize harm to the property resulting from its use. 49 U.S.C. § 303(c). The Section 4(f) properties at issue here are Lake Marion and the Palmetto Trail.

The bulk of defendants' argument against leave to amend centers on whether the Section 4(f) claim is time-barred. The applicable statute of limitations requires Section

4(f) claims be filed within 180 days after publication of a notice in the Federal Register that approval is final pursuant to the law under which the agency action is taken. 23 U.S.C. § 139(l); Highland Village Parents Group v. U.S. Fed. Highway Admin., 562 F.Supp.2d 857, 863 (E.D. Tex. 2008). Thus, without more, the plaintiffs' Section 4(f) claim would appear to be time-barred.

Federal Rule of Civil Procedure 15(c)(1)(B), however, provides that an amendment to a pleading that "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out–or attempted to be set out–in the original pleading," relates back to the date of the original pleading. Application of Rule 15(c)(1)(B) "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Mayle v. Felix, 545 U.S. 644, 659 (2005) (citations omitted). Thus, relation back applies "when the claims added by amendment arise from the same core facts" as the claims included in the original complaint, but "not when the new claims depend upon events separate in 'both time and type' from the originally raised episodes." Id. at 657 (citations omitted).

The court finds that plaintiffs' Section 4(f) claim falls squarely within the relation back rule. The Section 4(f) claim and the originally-filed NEPA claims arise out of the same "conduct, transaction, or occurrence": the proposed construction of the Connector. The new claim and original claims also rely on the same operative facts to show that approval of the Connector was unlawful, e.g., whether defendants used an impermissibly narrow statement of purpose and need to justify disregarding alternatives to the Connector, whether the Connector fulfills the project purpose by serving a demonstrated

5

transportation need, and whether defendants considered or applied measures to minimize adverse impacts.

The federal defendants also assert that plaintiffs fail to meet the standard for amendment under Rule 15(a). They argue prejudice and futility, but these arguments are really just restatements of their statute of limitations argument. The federal defendants also argue undue delay, but delay alone is not enough to deny leave to amend. See Johnson, 785 F.2d at 510. Moreover, plaintiffs moved to amend reasonably soon after the interlocutory appeal was resolved.

In a supplemental response and sur-reply brief accompanied by hundreds of pages of exhibits, the federal defendants assert for the first time that plaintiffs forfeited their Section 4(f) claim by failing to raise this issue during the administrative process. Local Rule of Civil Procedure 7.07 states that "[r]eplies to responses are discouraged." The Local Rules do not even contemplate sur-replies. Thus, while the federal defendants' argue that plaintiffs should have raised the Section 4(f) issue earlier, it is the federal defendants themselves who should have raised their forfeiture argument in their first responsive pleading.

In any event, plaintiffs did not forfeit their Section 4(f) claim. Ordinarily, courts will not consider objections to administrative actions that were not raised during administrative proceedings. Appalachian Power Co. v. E.P.A., 251 F.3d 1026, 1036 (D.C. Cir. 2001). Parties challenging certain environmental laws have a responsibility, during the administrative process, to "structure their participation so that it is meaningful, so that it alerts the agency to the [litigant's] position and contentions." Vermont Yankee

Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 553 (1978). Here, the federal defendants have submitted hundreds of pages of comments from plaintiffs that defendants argue show plaintiffs' lack of assertion of a Section 4(f) issue regarding Lake Marion and the Palmetto Trail. Defendants are attempting to place a higher burden on plaintiffs during the administrative process than the law requires. The law does not require plaintiffs to raise the precise legal issues or claims during the administrative process that they ultimately assert in a civil lawsuit. During the administrative process, plaintiffs must have meaningfully participated so that defendants could discern their position. See id. The exhibits submitted by defendants show that plaintiffs did extensively participate in the comment process and that plaintiffs made their objections to the project clear. That plaintiffs may not have specifically cited to Section 4(f) in their comments is not fatal to their attempt to bring such a claim now.

Finally, defendant Limehouse argues against leave to amend on the basis that such a motion is too late under the scheduling order. However, because of defendant Limehouse's motion to dismiss, the subsequent appeal, and the stay of the litigation, the February 12, 2007 proposed scheduling order was never approved by the court. As the court has not entered a scheduling order, there is no scheduling order that could bar plaintiffs' current motion to amend.

**B. Defendants' Motion for Voluntary Remand and Stay of Litigation**

Defendants have moved for a voluntary remand of the decision adopting the FEIS to the FHWA for further review consistent with NEPA and FHWA regulations. Defendants also request the court to stay all proceedings until after final action on the

7

remanded decision has been completed. Defendants argue that NEPA and FHWA regulations require additional environmental review and agency action before the project can go forward because more than three years have passed since approval of the FEIS and no major steps have been taken to advance the action. See 23 C.F.R. § 771.129(b). Defendants assert that during the reevaluation, they would re-examine the FEIS and decision and make any modifications warranted by changes in facts or circumstances. According to defendants, potential changes could narrow or even moot issues currently presented in this case. Thus, say defendants, a remand is in the interest of judicial economy.

The court has addressed this issue of reevaluation once before in this case. The state defendants, in their motion to dismiss, argued that plaintiffs' claims were not then ripe because the federal defendants were obligated to conduct a reevaluation of the EIS. In its order on the motion to dismiss, the court noted that "[t]he regulations do not require defendants to develop a new environmental impact statement, but only to consider the environmental impacts caused by any changes to the project that have occurred since the FEIS was issued." S.C. Wildlife Fed'n v. S.C. Dept. of Transp., 485 F.Supp.2d 661, 671 (D.S.C. 2007). The court determined that judicial review would pose little interference with the reevaluation given its "narrow nature and the lack of any indication that the agencies intend to use it for a thorough evaluation of all environmental impacts." Id. at 671-72. Thus, the court determined that the reevaluation process would not render plaintiffs' claims unripe.

Ripeness and voluntary remand, however, are two different issues. That the

reevaluation process did not support a ripeness challenge does not necessarily mean that reevaluation does not provide good cause for remand. The parties do not dispute that a reevaluation is required by regulation:

> A written evaluation of the final EIS will be required before further approvals may be granted if major steps to advance the action (e.g., authority to undertake final design, authority to acquire a significant portion of the right-of-way, or approval of the plans, specifications and estimates) have not occurred within three years after the approval of the final EIS, final EIS supplement, or the last major Administration approval or grant.

23 C.F.R. § 771.129(b). As defendants have submitted, and plaintiffs have not disagreed, no major steps have been taken to advance the project within three years of the FEIS. See Affidavit of Robert L. Lee.

The Fourth Circuit has noted that, "[w]hen a court reviews an agency action, the agency is entitled to seek remand 'without confessing error, to reconsider its previous position.'" Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 215 (4th Cir. 2009) (quoting SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001)). This furthers the policy of allowing an agency to assess 'the wisdom of its policy on a continuing basis.'" SKF, 254 F.3d at 1028 (quoting Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 864 (1984)). When an agency seeks remand because of intervening events outside of the agency's control, "remand is generally required if the intervening event may affect the validity of the agency action." SKF, 254 F.3d at 1028. Even if no intervening events occur, the agency may request a remand to reconsider its previous position, and the court has discretion over whether to grant such a request. Id. at 1029 (citations omitted).

Here, the remand defendants request stems from a reevaluation process required

by regulation. The reevaluation will allow the federal defendants "an opportunity to review the Decision and FEIS to determine whether the analysis upon which the Decision and FEIS rely still applies." Defendants' Joint Motion, at 6. Since the FEIS was completed, circumstances may have changed to the extent that additional environmental review is warranted. The reevaluation process could result in a supplemental or new EIS for the project. Indeed, the reevaluation could affect plaintiffs' claims, perhaps even mooting some of them. For example, as defendants acknowledge, "a reevaluation could result in a revised analysis of direct and indirect environmental impacts, as well as a revised analysis of available alternatives—all issues of which the Plaintiffs have complained." Id. at 8. Until the reevaluation occurs, however, there is no way to predict what the outcome of the process will be and how that outcome will impact this litigation. Under these circumstances, the court finds that a remand and a stay of this litigation are in order.

### III. CONCLUSION

For the foregoing reasons, the court **GRANTS** plaintiffs' motion for leave to amend the complaint and also **GRANTS** defendants' joint motion for voluntary remand and stay of litigation.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**July 27, 2009**
**Charleston, South Carolina**